**MORGAN, LEWIS & BOCKIUS LLP**
*(Pennsylvania Limited Liability Partnership)*
502 Carnegie Center
Princeton, New Jersey 08540-7814
Terry D. Johnson
Jason J. Ranjo
(609) 919-6669

Grace E. Speights (*pro hac vice*)
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
(202) 739-5189

*Attorneys for Defendants JPMorgan Chase Bank,*
*N.A. and Jamie Dimon*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WANDA WILSON, <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE BANK N.A., JAMIE DIMON, individually and in his official capacity, JANE and/or JOHN DOES 1-10, and XYZ Entities 1 to 10. <br><br> Defendants. | Case No.: 2:18-cv-13789-JMV-JBC <br><br> **Oral Argument Requested** <br><br> *ELECTRONICALLY FILED* <br><br> **Motion Day: November 18, 2019** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE <u>SOUTHERN DISTRICT OF NEW YORK</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

STATEMENT OF RELEVANT FACTS ...................................................5

    I.     After Working For JPMC For Nearly 18 Years Without Incident, Plaintiff Developed A Negative Relationship With A Co-Worker. ...........................................................................5

    II.    Plaintiff Alleges That Her Manager Docked Her Pay After Plaintiff Complained About Her Co-Worker. ...................................6

    III.   Plaintiff Began Writing To Mr. Dimon To Complain About Her Manager And Her Co-Worker, And JPMC Granted Her A Medical Leave Of Absence. ...............................................7

    IV.   Plaintiff Returned From Medical Leave And Began Working With JPMC Recruiters To Find Another Position With The Bank. .............................................................................8

    V.    Plaintiff Failed To Find A New Position Within JPMC, And Her Employment Was Terminated. ...............................................13

ARGUMENT .........................................................................................13

    I.     Plaintiff's Claims Should Be Dismissed, Pursuant to Rule 12(b)(2), Because The Court Lacks Personal Jurisdiction Over Defendants ...................................................................13

         A.    The Court Lacks General Personal Jurisdiction Over Defendants. ............................................................15

         B.    The Court Lacks Specific Personal Jurisdiction Over Defendants .............................................................16

    II.    Plaintiff's Claims Should Be Dismissed For Improper Venue, Pursuant to Rule 12(b)(3), Because None Of The Alleged Events Giving Rise To Plaintiff's Claims Occurred In New Jersey. .........................................................................17

# TABLE OF CONTENTS

**Page**

III. Plaintiff's Claims Should Be Dismissed, Pursuant to Rule 12(b)(6), Because The Complaint Fails To State Facts Sufficient To Maintain Any Plausible Cause Of Action...................19

    A. Plaintiff's Allegations Against JPMC are Insufficient to Maintain any Viable Claim.....................................20

        1. Plaintiff has failed to adequately allege a claim for hostile work environment under the NYSHRL or the NYCHRL ..................................................20

            a. Plaintiff's allegations about Jensen and Jarnigan amount to trivial slights that are not actionable............................................22

            b. Plaintiff's remaining "harassment" allegations are unrelated to her race and are not actionable ......................................24

        2. Plaintiff has failed to adequately allege a claim for race discrimination under the NYSHRL or the NYCHRL...................................................27

        3. Plaintiff has failed to adequately allege a claim for retaliation under the NYSHRL or the NYCHRL ..........30

    B. Plaintiff's Allegations Against Mr. Dimon are Insufficient to Establish Individual Liability. ........................33

        1. Mr. Dimon cannot be directly liable because Plaintiff has failed to allege that he was personally involved in any unlawful conduct ................................33

        2. Mr. Dimon cannot be directly liable because Plaintiff has failed to allege that he was personally involved in any unlawful conduct ................................35

## TABLE OF CONTENTS

**Page**

IV.   Should The Court Not Dismiss Plaintiff's Claim In Their Entirety, This  Matter Should Be Transferred To The United States District Court For  The Southern District Of New Jersey, Pursuant To 28 U.S.C. 1404(a). ........................................................37

   A.   The Private Interest Factors Favor Transfer Of Venue. ..........38

   B   The Public Interest Factors Favor Venue Transfer.................39

CONCLUSION .......................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................20

*Avila v. 1212 Grant Realty, LLC*,
  No. 18 CIV. 7851 (LGS), 2019 WL 4805333 (S.D.N.Y. Sept. 30,
  2019) .......................................................................................30

*Bermudez v. City of New York*,
  No. 1:10-CV-1162, 2015 WL 1500235 (S.D.N.Y. Mar. 31, 2015) ..................24

*Boonmalert v. City of New York*,
  721 F. App'x 29 (2d Cir. 2018) .................................................23, 27

*Boswell v. Cable Servs. Co., Inc.*,
  No. CV 16-4498, 2017 WL 2815077 (D.N.J. June 29, 2017) ....................16, 17

*Brunache v. MV Transp., Inc.*,
  151 A.D.3d 1011 (N.Y. App. Div. 2017) .........................................31

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .................................................................17

*Cadapult Graphic Sys., Inc.v. Tektronix, Inc.*,
  98 F. Supp. 2d 560 (D.N.J. 2000) .................................................37

*Carter v. Verizon*,
  No. 13-CV-7579, 2015 WL 247344 (S.D.N.Y. Jan. 20, 2015) .........................23

*Choi v. Damul Corp.*,
  No. CIV.A. 12-2440 JLL, 2014 WL 314669 (D.N.J. Jan. 27, 2014) ................17

*" Cottman Transmission Systems, Inc. v. Martino*,
  36 F.3d 291 (3d Cir. 1994) .......................................................18

*Crawford-Bey v. New York & Presbyterian Hosp.*,
  No. 08 CIV. 5454 RJS, 2011 WL 4530193 (S.D.N.Y. Sept. 30,
  2011) .......................................................................................26

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .............................................................13, 15

# TABLE OF AUTHORITIES

**Page(s)**

*Davis-Bell v. Columbia Univ.*,
  851 F. Supp. 2d 650 (S.D.N.Y. 2012) ...............................................21

*Delta Air Lines, Inc. v. Chimet, S.p.A.*,
  619 F.3d 288 (3d Cir. 2010) ...............................................39

*DePasquale v. Morgan Stanley Smith Barney LLC*,
  No. 10-6828, 2011 WL 3703110 (D.N.J. Aug. 23, 2011)...................................19

*Diaz v. City Univ. of New York*,
  No. 13 CV 2038 PAC MHD, 2014 WL 10417871 (S.D.N.Y. Nov. 10, 2014), *report and recommendation adopted in relevant part*, No. 13 CIV. 2038 PAC MHD, 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015) ...............................................31

*Dillon v. Ned Mgmt., Inc.*,
  85 F. Supp. 3d 639 (E.D.N.Y. 2015) ...............................................36

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998)...............................................21

*First Nat'l Bank of Pennsylvania v. Transamerica Life Ins. Co.*,
  No. CV 14-1007, 2016 WL 520965 (W.D. Pa. Feb. 10, 2016).........................16

*Fragola v. Plainville Police Dep't*,
  No. CV 15-6281 (CCC), 2016 WL 2943816 (D.N.J. May 20, 2016)....38, 39, 40

*France v. Touro College*,
  No. 14-CV-4613 (NGG) (CLP), 2016 WL 1105400 (E.D.N.Y. Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016) ...............................................35

*Gilarno v. Borough of Freedom*,
  462 F. App'x 177 (3d Cir. 2012) ...............................................33

*Gonzalez v. City of New York*,
  377 F. Supp. 3d 273 (S.D.N.Y. 2019) ...............................................27

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)...............................................14

# TABLE OF AUTHORITIES

**Page(s)**

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)............................................................................14

*Henry v. NYC Health & Hosp. Corp.*,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014) ................................................31

*Hill v. Citibank Corp.*,
    312 F. Supp. 2d 464 (S.D.N.Y. 2004) ..............................................29

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..........................................................................14

*J.S. v. Dalton Sch., Inc.*,
    No. 2:18-cv-10258, 2019 WL 161507 (D.N.J. Jan. 9, 2019) ............18

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d. Cir. 1995) ..............................................................38

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
    987 N.Y.S.2d 338 (2014)...................................................................24

*Lacey v. Cessna Aircraft Co.*,
    932 F.2d 170 (3d Cir. 1991) ..............................................................39

*LaSalle v. City of New York*,
    No. 13 CIV. 5109 PAC, 2015 WL 1442376 (S.D.N.Y. Mar. 30,
    2015) .................................................................................................30

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*,
    960 F.2d 1217 (3d Cir. 1992) ............................................................14

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ..............................................................21

*Miller v. Native Link Constr., LLC*,
    No. CV 15-1605, 2017 WL 3536175 (W.D. Pa. Aug. 17, 2017).......16

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) ................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

*Moore v. City of N.Y.*,
No. 15-cv-6600-GBD-JLC, 2017 WL 35450 (S.D.N.Y. Jan. 3, 2017), *report and recommendation adopted*, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017) ...................................................................35

*Moreau v. Wallgreens*,
Civ. No. 06-3347 (JLL), 2009 WL 192467 (D.N.J. Jan 27, 2009) ...................39

*Motta v. Glob. Contract Servs. Inc.*,
No. 15-cv-8555-LGS, 2016 WL 1611489 (S.D.N.Y. Apr. 21, 2016), *appeal dismissed* (Sept. 28, 2016), *aff'd sub nom.* 675 F. App'x 98 (2d. Cir. 2017) .................................................................35

*Muhammad v. Juicy Couture/Liz Claiborne, Inc.*,
No. 09.civ.8978, 2010 WL 4032735 (S.D.N.Y. July 30, 2010).......................32

*Petrisch v. HSBC Bank USA, Inc.*,
No. 07-cv-3303, 2013 WL 1316712 (E.D.N.Y. Mar. 28, 2013) .......................21

*Plum Tree, Inc. v. Stockment*,
488 F.2d 754 (3d Cir. 1973) ..............................................................................37

*Powerhouse Equip. & Eng'g Co. v. Power Mech., Inc.*,
No. 1:18-CV-10744-NLH-JS, 2019 WL 3334758 (D.N.J. July 25, 2019) ..................................................................................................................15

*Ricoh Co., ltd. v. Honeywell, Inc.*,
817 F. Supp. 473 (D.N.J. 1993) .........................................................................37

*Soloviev v. Goldstein*,
104 F. Supp. 3d 232 (E.D.N.Y. 2015) ................................................................36

*Staff4Jobs, LLC v. List Logistics, LLC*,
No. 318CV13399BRMLHG, 2019 WL 2635997 (D.N.J. June 27, 2019) ..................................................................................................................15

*Sutter v. Dibello*,
No. CV18817ADSAKT, 2019 WL 4195303 (E.D.N.Y. Aug. 12, 2019), *report and recommendation adopted*, No. 218CV00817ADSAKT, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019) ....................................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

*Taube v. Common Goal Sys., Inc.*,
No. CIV.A. 11-2380 SDW, 2011 WL 5599821 (D.N.J. Nov. 1,
2011), *report and recommendation adopted*, No. CIV.A. 11-2380
SDW, 2011 WL 5825792 (D.N.J. Nov. 16, 2011) .............................................19

*Telcordia Tech Inc. v. Telkom SA Ltd.*,
458 F.3d 172 (3d Cir. 2006) ...........................................................14

*Tyson v. Town of Ramapo*,
No. 17-CV-4990 (KMK), 2019 WL 1331913 (S.D.N.Y. Mar. 25,
2019) ...................................................................................34

*Villar v. City of New York*,
135 F. Supp. 3d 105 (S.D.N.Y. 2015) ...............................................33

*White v. Bridge Inc.*,
No. 18-CV-1689 (AJN), 2019 WL 4805896 (S.D.N.Y. Sept. 30,
2019) ...................................................................................23

*Yacovella v. Apparel Imports, Inc.*,
No. CIV.A. 14-5484 KM, 2015 WL 5098009 (D.N.J. Aug. 31,
2015) ...................................................................................19

## STATUTES

28 U.S.C. § 1332 ...........................................................................18

28 U.S.C. § 1391 (b)(1)...................................................................18

28 U.S.C. § 1391 (b)(2)..................................................................2, 18

28 U.S.C. § 1391 (b)(3)...................................................................18

28 U.S.C. § 1391(b)-(c) ...................................................................18

28 U.S.C. § 1404(a) ....................................................................5, 37, 41

New York City Human Rights Law .................................................passim

New York State Human Rights Law ................................................passim

# TABLE OF AUTHORITIES

**Page(s)**

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(2) ................................................2, 13, 17, 41

Federal Rule of Civil Procedure 12(b)(3) ....................................................2, 17, 41

Federal Rule of Civil Procedure 12(b)(6) ....................................................2, 19, 41

## **INTRODUCTION**

By Order, dated August 28, 2019, this Court dismissed, in its entirety, the initial Complaint of Plaintiff Wanda Wilson ("Plaintiff") because she improperly asserted her employment discrimination, retaliation, and harassment claims under the New Jersey Law Against Discrimination ("NJLAD"). As the Court found, the NJLAD simply did not apply here, as Plaintiff worked exclusively for Defendant JPMorgan Chase Bank, N.A. ("JPMC" or the "Bank") in New York, not New Jersey. While Plaintiff has attempted to correct the deficiencies of her initial Complaint, and the First Amended Complaint ("FAC") now pleads Plaintiff's employment claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), Plaintiff's claims should still be dismissed in their entirely for several important reasons.

As an initial matter, the FAC should be dismissed because the Court lacks specific or general personal jurisdiction over both JPMC and the individual defendant, Jamie Dimon ("Mr. Dimon"), the Chairman and CEO of JPMC's parent company. Specifically, neither defendant is subject to general personal jurisdiction in New Jersey because neither defendant resides or has its principal place of business in this State. Specific jurisdiction is likewise lacking because all of the alleged conduct giving rise to Plaintiff's employment claims purportedly occurred in New York, not New Jersey. Absent any alleged facts to establish minimum contacts

1

between Defendants and New Jersey, the FAC should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(2).

Even if the Court had personal jurisdiction over Defendants, the FAC should still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3), because venue is improper in this District.  In this matter, venue is only proper in the jurisdiction where "a substantial part of the events or omissions giving rise to [Plaintiff's claims] occurred."  28 U.S.C. § 1391 (b)(2).  Given that all of the alleged facts underlying Plaintiff's employment claims occurred in New York City, the borough of Manhattan, the U.S. District Court for the Southern District of New York is the only proper venue for this action.

The FAC should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because – despite Plaintiff's second bite at the apple – the FAC does not come remotely close to pleading any viable discrimination, retaliation, or harassment claims against Defendants.  Ignoring, for the moment, Plaintiff's conclusory allegations and unsupported characterization of certain basic management decisions as race-related, the FAC alleges only that:

- In March 2016, Plaintiff's relationship with her manager began to deteriorate because he developed a closer working relationship with another employee.
- From December 2016 to April 2017, the other employee directed Plaintiff to perform menial tasks, such as picking up lunch, and she started spreading rumors about Plaintiff that had nothing to do with her race.
- When Plaintiff complained to her manager about the other employee's

treatment of her, the manager was dismissive of Plaintiff and began more closely scrutinizing her work.

- In April 2017, Plaintiff began a medical leave of absence for psychiatric issues.

- In July 2017, Plaintiff returned to work and continued to be paid while JPMC helped her look for another job with the Bank, reporting to a different manager.

- In August 2017, JPMC offered Plaintiff a severance package, which she refused.

- In November 2017, JPMC required Plaintiff to undergo a fitness for duty examination.

- Plaintiff interviewed for various positions of her choosing within JPMC, but she was told that she was not selected for any of them because she lacked enthusiasm.

- From April 2017 to December 2017, Plaintiff wrote Mr. Dimon on eight occasions complaining of the above alleged incidents and characterizing JPMC's general treatment of her as discriminatory, retaliatory, and harassing.  Mr. Dimon did not directly respond to Plaintiff.

- In June 2018, after Plaintiff was unable to find a position with JPMC for 11 months (while still getting paid), the Bank terminated her employment.

These alleged facts – even accepted as true – are not enough to support any viable legal claims against Defendants.  In particular, Plaintiff's claim that she was subjected to a hostile work environment based on her race (African American) should be dismissed because none of the above allegations – on their face – have anything to do with Plaintiff's race or any other protected characteristic.  And even if Plaintiff had alleged some connection between Defendants' purported conduct and her race, her allegations, at best, amount to ordinary workplace civility issues that are not actionable under either the NYSHRL or the NYCHRL.

Plaintiff's race discrimination claims fail for similar reasons.  Not only is the FAC devoid of any non-conclusory allegations that Plaintiff was treated less favorably because of her race, but Plaintiff's allegations that she was universally respected and rewarded for her "exceptional" performance throughout her 20-year career at JPMC belie any allegation of general discriminatory animus at JPMC. Plaintiff likewise fails to aver any viable retaliation claim because the FAC alleges no facts to establish any causal connection between Plaintiff's complaints of alleged discriminatory conduct starting in April 2017 and the termination of her employment more than a year later in June 2018.

Further, even if Plaintiff had alleged viable claims against JPMC, the FAC contains no allegations to establish individual lability on the part of Mr. Dimon, either directly through "actual participation" in the alleged conduct at issue, or as an aider and abettor of the conduct.  At most, Plaintiff alleges, without establishing that, as CEO of JPMorgan Chase, Mr. Dimon had individual responsibility for addressing or responding to correspondence she addressed to him, that Mr. Dimon is liable by virtue of his failure to personally address her various complaints between April 2017 and December 2017.  That theory is implausible because the FAC demonstrates that JPMC went to great lengths to assist Plaintiff by, for example, accommodating an extended medical leave, not requiring her to report to her former manager upon her return, and allowing her nearly a year to find a new position in the Bank while

continuing to pay her as if she were actively working.  That Plaintiff was merely unsatisfied with the assistance that JPMC provided to her is in no way actionable against the firm or against Mr. Dimon individually.

Finally, should the Court not dismiss Plaintiff's claims in their entirety, this matter should be transferred to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), as litigation in that District would be more convenient, efficient, and better serve the interest of justice.

## STATEMENT OF RELEVANT FACTS[1]

### I.      After Working For JPMC For Nearly 18 Years Without Incident, Plaintiff Developed A Negative Relationship With A Co-Worker.

Plaintiff is a resident of Middlesex County, New Jersey who worked as an administrative assistant for JPMC in New York City from 1997 to 2018.  (FAC ¶¶ 1, 11-12.)  In March 2016, Plaintiff worked as the administrative assistant supporting Paul Jenson ("Mr. Jenson"), Managing Director, Chief Administrative Officer and Head of Audit.  (*Id.* ¶ 27.)   At that time, Janet Jarnigan ("Ms. Jarnigan"), an Executive Director, was assigned as a team leader under Mr. Jenson.  (*Id.* ¶ 28.) Plaintiff alleges that, although she and Ms. Jarnigan initially "worked well as a team," as Ms. Jarnigan "developed a closer working relationship" with Mr. Jenson, she treated Plaintiff with less respect and began ordering Plaintiff to complete certain

---

[1]  For the purposes of this Motion only, all well-pled allegations in the FAC are accepted as true.

tasks.  (*Id.* ¶¶ 29-32.)  Plaintiff alleges that when she complained to Mr. Jensen that

Ms. Jarnigan "was exceeding her authority" and "spreading false rumors" about her,

Mr. Jensen advised Plaintiff that she was "being a 'bit dramatic.'"  (*Id.* ¶¶ 36-37.)

## II.     Plaintiff Alleges That Her Manager Docked Her Pay After Plaintiff Complained About Her Co-Worker.

Plaintiff alleges that she complained to Samantha Garber ("Ms. Garber"), an

Executive Director & Head of Human Resources for Audit, and thereafter noticed

that Mr. Jensen started "treating her with distrust" and responding to her in a "terse

and dismissive" manner.  (*Id.* ¶¶ 38-40.)  Plaintiff  alleges that she "also noticed her

colleagues distancing themselves from her . . . causing her to feel increasingly

isolated." (*Id.* ¶ 41.)  On April 5, 2017, Plaintiff contends that she complained again

to Ms. Garber, reporting that Ms. Jarnigan "was spreading false rumors and

sabotaging Plaintiff['s] . . . reputation," as well as "belittling her work ethic and

causing other employees to treat her differently."  (*Id.* ¶¶ 46-47.)  Plaintiff alleges

that she informed Ms. Garber that she had contacted JPMC's Employee Assistance

Program ("EAP"), which referred her to a therapist, and that Ms. Garber told her that

Barrak Green ("Mr. Green") in Employee Relations would contact her regarding her

complaints.  (*Id.* ¶¶ 48-49.)

## III.    Plaintiff Began Writing To Mr. Dimon To Complain About Her Manager And Her Co-Worker, And JPMC Granted Her A Medical Leave Of Absence.

On April 17, 2017, Plaintiff sent an email to Mr. Dimon's email address,

copying Ms. Garber, Mr. Green, and Charity Blackburn of JPMC Employee
Relations, stating:

- Mr. Jensen allegedly had "docked [Plaintiff] one week's pay . . . in retaliation for having reported him and Jarnigan to Human Resources" (*id.* ¶ 54-56);

- Ms. Jarnigan texted Mr. Jenson while he was on vacation to advise him that Plaintiff was "using his office phone" (*id.* ¶ 57);

- Ms. Jarnigan had been spreading "negative rumors and innuendos" about Plaintiff (*id.*); and

- Ms. Jarnigan was "using [Mr.] Jensen's vacation as an opportunity to further harass Plaintiff . . . and treat her as a waitress/servant" (*id.* ¶ 58).

Plaintiff wrote that she had two options:  either "take 'short term disability'" or
"return to work and continue to be tortured, degraded and humiliated."  (*Id.* ¶ 59.)

On or about April 17, 2017, Plaintiff discovered an email from Cherie
Niswonger, a Vice President in Employee Relations, to Mr. Jensen, advising him
that Plaintiff "had notified Defendant Dimon that Jensen docked her pay, and that .
. . [Plaintiff] suffered from anxiety."  (*Id.* ¶ 61.)  Plaintiff alleges that she left work
early the following day, and was admitted to the hospital "with chest pains, high
blood pressure and breathing issues" on April 19, 2017.  (*Id.* ¶¶ 62-63.)   The
following day, April 20, 2017, Plaintiff "was transferred to the Hospital's psychiatric
unit on suicide alert."  (*Id.* ¶ 64.)  She alleges that, on April 24, 2017, Mr. Jensen
denied her "request for additional sick days requiring that she request emergency
vacation from [Ms.] Garber."  (*Id.* ¶ 65.)

Plaintiff alleges that she again sent an email to Mr. Dimon on Administrative Assistants' Day requesting assistance, noting that he had reportedly stated, at a secretarial town hall meeting, that if a JPMC employee "sees something they should say something, and he would provide support and follow the emails until the matter is resolved." (*Id.* ¶ 66.)

## IV.   Plaintiff Returned From Medical Leave And Began Working With JPMC Recruiters To Find Another Position With The Bank.

Plaintiff alleges that on June 9, 2017, JPMC extended her disability leave by 30 days, but she refused any further disability leave, as she was allegedly "ready to return to work as of July 7, 2017." (*Id.* ¶¶ 68-69.) Around that time, Clarissa Ramos-Cafarelli ("Ms. Ramos-Cafarelli"), Managing Director, Employee Relations, contacted Plaintiff and advised that recruiters would be working with her to assist her in finding a new position at JPMC. (*Id.* ¶ 70.)

Plaintiff alleges that on July 7, 2017, she sent a third email to Mr. Dimon, copying Ms. Ramos-Cafarelli and Julie Johnson ("Ms. Johnson"), this time referring to an purported "conspiracy theory" against her. (*Id.* ¶ 72.) On July 12, 2017, Plaintiff contends that she was prepared to return to work but had no specific assignment and, by July 24, 2017, "had yet to hear from anyone from [JPMC's] team of recruiters." (*Id.* ¶¶ 74-75.)

On August 10, 2017, Plaintiff sent a fourth email to Mr. Dimon, copying Ms. Johnson, Ms. Ramos-Cafarelli, Daniel Conti of JPMC's Global Employee

Assistance & Worklife Program, "referencing 'Racism at its best'" in the subject line and stating, in part:

> Please stop harassing me.  Please stop judging me by the color of my skin and start respecting me as a person, a black woman who spoke up regardless of the consequences.  As I have said on numerous occasions, I understand that everyone involved in this racist situation works for JPMorgan and I am the underdog.  I get it, you are not trying to help me. If you were trying to help me or keep me employed, I would not be sitting at home. Clarissa told me approximately one month ago that a recruitment team would be in touch to help me find a new position within JPMorgan, to date, I have not had one interview via phone or in person. . . .

(*Id.* ¶ 77.)  In that email, Plaintiff also mentioned an incident with JPMC's security personnel in which she felt that "she was [being] portrayed as an 'angry black person,'" stating to Mr. Dimon "that she was incapable of harming anyone, even herself, despite her prior suicidal ideations."  (*Id.* ¶ 78.)

Plaintiff alleges that, on or about August 23, 2017, she received what she claims is a severance agreement from JPMC.  (*Id.* ¶ 80.)  Plaintiff claims that on October 11, 2017, she emailed Mr. Dimon for a fifth time, referencing "'Whistleblower-Racism – Separation Agreement,'" and stating:

> I wrote to you on several occasions and each time I emailed you my life took a turn for the worst [sic].  I apologize for believing in you and taking up your time.  For some bizarre reason I think my life matters to you.  JPMorgan failed me!

(*Id.* ¶ 83.)  Plaintiff alleges that she also made reference to her alleged experiences over the prior seven months, including her hospitalization, medical leave of absence

from JPMC, and the separation agreement she received following her return to work. (*Id.* ¶ 84.)  Plaintiff claims that she was advised that "she was scheduled to be terminated on November 1, 2017, if she failed to find another position or refused to sign the separation agreement."  (*Id.*)

Plaintiff emailed Mr. Dimon again on October 11th, stating, in part:

> I have three strikes against me.  I am Black, I am 55 years of age, and I do not have a degree.  You are probably saying why is this my problem?  Well it is your problem because JPMorgan allowed me to win.  I went above and beyond the call of duty to make sure that every Officer that I supported was successful.  I worked long hours and I watched white secretaries graduate to areas where I should have been allotted the opportunity.  I accepted this disadvantage with a smile and with grace.

(*Id.* ¶ 86.)

Plaintiff alleges that she was advised by email dated November 3, 2017, that she had to undergo a fitness for duty evaluation and provide medical records related to her disability.  (*Id.* ¶ 87.)

On November 8, 2017, Plaintiff alleges that she sent a seventh email to Mr. Dimon with the subject heading "Violation of Medical Rights/Separation Agreement to Close EEOC Complaint."  (*Id.* ¶ 88.)  In that email, Plaintiff allegedly asked Mr. Dimon, among other things, if he would allow his daughter to surrender all of her medical records.  (*Id.* ¶ 89.)

On November 9, 2017, JPMC renewed its request for a fitness for duty examination based, in part, on Plaintiff's suicidal ideations, but Plaintiff stated that

10

she felt "[t]here was no need to subject [her] . . . to [an] . . . examination other than to further harass her." (*Id.* ¶¶ 90-91.)

On or about December 28, 2017, Plaintiff alleges that she was asked to meet with a JPMC recruiter, Gailit Pearlman ("Ms. Pearlman"), to assist her in finding a new position at JPMC. (*Id.* ¶ 94.) Plaintiff claims that she traveled to New York to meet Ms. Pearlman, but when she arrived, Plaintiff learned that Ms. Pearlman intended for them to speak by telephone, rather than in person. (*Id.* ¶ 96.)

The following day, December 29, 2017, Plaintiff emailed Mr. Dimon for the eighth time, copying JPMC's in-house legal counsel and noting, in part:

> How dare JPMorgan continue to humiliate and degrade me! This nonsense needs to stop immediately! This is emotional and mental abuse. I am trying to keep myself together but JPMorgan keeps pouring salt in a wound that I am trying to heal. JPMorgan destroyed every holiday in 2017 for me and took away my bonus and increase for 2018. Please don't ruin my New Year. Thanks to JPMorgan I cannot say Happy New Year as I am not happy and will not be happy until JPMorgan stops tormenting me for not signing the Separation Agreement.

(*Id.* ¶ 97.)

Plaintiff alleges in her complaint, that, in or around February 2018, she advised JPMC that she would not resign, sign a separation agreement, or accept disability benefits, and instead wanted to "return to work in a position which was comparable to the salary responsibilities and location where she had most recently worked." (*Id.*)

On February 3, 2018, Plaintiff emailed Mr. Dimon for the ninth and final time, writing "JPMorgan's Retaliation has turned to insults" and purportedly repeating themes she had included in prior correspondence. (*Id.* ¶ 98.) Plaintiff does not allege that Mr. Dimon ever responded to this or to any of her prior eight emails to him or otherwise engaged with her specifically or had any input or involvement in any decision related to her employment.

Plaintiff alleges that, on or about March 9, 2018, JPMC offered her a position that was levels below her prior grade, and she claims that the position supported an individual with whom she allegedly had "difficulties" in the past. (*Id.* ¶ 101.)

Plaintiff contends that she had a number of interviews for positions selected by JPMC, which she alleges were beneath her experience and expertise. (*Id.* ¶ 102.) Plaintiff alleges that she went on  a series of interviews for positions that she selected, that she received positive feedback, but she was not selected for any of those positions,  "due to [JPMC's] representation that she 'lacked enthusiasm.'" (*Id.* ¶¶ 105-06.)

## V.    Plaintiff Failed To Find A New Position Within JPMC, And Her Employment Was Terminated.

Plaintiff alleges that she was advised by letter, dated May 24, 2018, "that her employment would terminate effective May 29, 2018 if she was unable to find a position with [JPMC] or if she was not retained in an unpaid status." (*Id.* ¶ 108.) Plaintiff alleges that by May 29, 2018, she believed her employment had terminated

and she applied for unemployment compensation benefits with the New York State

Department of Labor ("DOL") and began to receive such benefits.  (*Id.* ¶¶ 109-11.)

Plaintiff alleges that, by email dated June 14, 2018, the DOL advised her that

"she was being charged with fraud" based on JPMC advising the DOL that she "had

not been terminated on May 29, 2018."  (*Id.* ¶ 111.)  Plaintiff acknowledges that she

continued to receive pay checks from JPMC, but alleges that she believed that the

monies were for her accrued, unused personal time off.  (*Id.* ¶ 112-13.)

Plaintiff alleges that JPMC represented that her employment was not

terminated until June 14, 2018.  (*Id.* ¶ 114.)

## **ARGUMENT**

### I.     **Plaintiff's Claims Should Be Dismissed, Pursuant to Rule 12(b)(2), Because The Court Lacks Personal Jurisdiction Over Defendants.**

The FAC should be dismissed because this Court lacks personal jurisdiction

over Defendants.  "Federal courts ordinarily follow state law in determining the

bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117,

125 (2014) (citing to Fed. R. Civ. P. 4(k)(1)(A)).  Under New Jersey's long-arm

statute, personal jurisdiction exists to the full extent permissible under the U.S.

Constitution.  *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir.

2006).  Federal due process requires that a defendant have "minimum contacts" with

the forum state so that "maintenance of the suit does not offend traditional notions

of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

316 (1945).  A defendant is deemed to have minimum contacts where either general or personal jurisdiction exists.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).   General jurisdiction arises when the defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over the defendant in all matters, while specific jurisdiction arises when a defendant's specific contacts with the forum give rise to the claim in question.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).

Plaintiff bears the burden of demonstrating that jurisdiction over each of the defendants is appropriate.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  On a motion to dismiss, a plaintiff must "present[ ] a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  "Once the plaintiff meets his or her burden, the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable."   *Staff4Jobs, LLC v. List Logistics, LLC*, No. 318CV13399BRMLHG, 2019 WL 2635997, at *1 (D.N.J. June 27, 2019).

In this case, Plaintiff has averred no facts and can offer no evidence to establish personal jurisdiction over either JPMC or Mr. Dimon.

**A.      The Court Lacks General Personal Jurisdiction Over Defendants.**

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137.  "With respect to a corporation, the place of incorporation and principal place of business are 'paradigm . . . bases for general jurisdiction'" because that is where the defendant is "at home."  *Id.* (quoting *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011)).  An individual defendant is "at home" in the State where the individual is domiciled.  *Powerhouse Equip. & Eng'g Co. v. Power Mech., Inc.*, No. 1:18-CV-10744-NLH-JS, 2019 WL 3334758, at *5 (D.N.J. July 25, 2019).

Here, Plaintiff has not met her burden of establishing that either JPMC or Mr. Dimon is "at home" in New Jersey.  Tellingly, Plaintiff does not even attempt to allege – through conclusory allegations or otherwise – that Mr. Dimon is subject to general personal jurisdiction in this Court.  In fact, while Plaintiff alleges that Mr. Dimon's office was in New York (FAC ¶ 12), she avers no facts whatsoever about where Mr. Dimon resides or how he might be considered "at home" in New Jersey.[2] Thus, Plaintiff has failed to meet her burden as to Mr. Dimon.  *See Boswell v. Cable Servs. Co., Inc.*, No. CV 16-4498, 2017 WL 2815077, at *3 (D.N.J. June 29, 2017) (Vasquez, J.) (no general jurisdiction over individual defendants where "Plaintiff makes no showing that any are domiciled in New Jersey").

---

[2]  In fact, Mr. Dimon resides in New York.  (Dkt. No. 1 ¶ 7.)

Plaintiff also fails to allege any facts to establish that this Court has general personal jurisdiction over JPMC.  As other federal courts in this Circuit have recognized, "JPMC is not a corporation"; it "is a national banking association with its principal place of business located in Ohio," and it can only be subject to general personal jurisdiction outside of that State in "an exceptional case."  *First Nat'l Bank of Pennsylvania v. Transamerica Life Ins. Co.*, No. CV 14-1007, 2016 WL 520965, at *4 (W.D. Pa. Feb. 10, 2016); *see Miller v. Native Link Constr., LLC*, No. CV 15-1605, 2017 WL 3536175, at *22 (W.D. Pa. Aug. 17, 2017) (same).  Because Plaintiff alleges *no facts* to establish any connection between JPMC and New Jersey, let alone "exceptional" ones, she has failed to meet her burden to establish general jurisdiction.

### B.    The Court Lacks Specific Personal Jurisdiction Over Defendants.

Specific jurisdiction requires that the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted).  "Additionally, due process requires that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Boswell v. Cable Servs. Co.*, Inc., No. 16-4498, 2017 WL 2815077, at *3 (D.N.J. June 29, 2017).

In this case, there are no allegations that any of the purported conduct

underlying Plaintiff's employment claims – all asserted under New York law, where Plaintiff worked – occurred in New Jersey.  In fact, the only alleged connection New Jersey has to this case is that Plaintiff purportedly lives there.  (FAC ¶ 1.)  "It is black letter law, however, that a plaintiff's residence, by itself, is insufficient to establish personal jurisdiction."  *Choi v. Damul Corp.*, No. CIV.A. 12-2440 JLL, 2014 WL 314669, at *7 (D.N.J. Jan. 27, 2014) (collecting cases).

Absent any allegations to establish general or specific personal jurisdiction over Defendants, Plaintiff has failed to meet her burden, and all of her claims should be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II.     Plaintiff's Claims Should Be Dismissed For Improper Venue, Pursuant to Rule 12(b)(3), Because None Of The Alleged Events Giving Rise To Plaintiff's Claims Occurred In New Jersey.

Even if the Court had personal jurisdiction over Defendants in New Jersey, which is does not, venue is improper in this State because none of the alleged events giving rise to Plaintiff's claims occurred in New Jersey.  Because each Defendant either resides or has its principal place of business outside of New Jersey, venue can only be proper in this District if "a substantial part of the events or omissions giving rise to [Plaintiff's claims] occurred" in New Jersey.[3]  28 U.S.C. § 1391(b)(2).  "In

---

[3]  Subsection (b)(1) of 28 U.S.C. § 1391 does not apply because Mr. Dimon's resides in New York, not New Jersey.  *See* 28 U.S.C. § 1391(b)-(c).  Likewise, Subsection (b)(3) is inapplicable because "an alternate venue exists [given that Plaintiff] could have brought this action pursuant to Section 1391(b)(2) in the Southern District of New York since a substantial portion of the events giving rise to the claim occurred in Manhattan, New York."  *J.S. v. Dalton Sch., Inc.*, No. 2:18-cv-10258, 2019 WL 161507, at *4 (D.N.J. Jan. 9, 2019).

assessing whether events or omissions giving rise to the [plaintiff's] claims are substantial, it is necessary to look at the nature of the dispute*."* *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).  Moreover, federal law "favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be substantial," so as to prevent a defendant from being "haled into a remote district having no real relationship to the dispute."  *Id.* at 294.

Here, as demonstrated above, none of the alleged events giving rise to Plaintiff's claims occurred in New Jersey.[4]  Rather, Plaintiff was employed in Manhattan, and all of JPMC's decisions related to that employment were made in Manhattan.  (FAC ¶ 11-12.)  As such, the Southern District of New York is the only venue where the alleged events related to Plaintiff's employment claims occurred. *See Taube v. Common Goal Sys., Inc.*, No. CIV.A. 11-2380 SDW, 2011 WL 5599821, at *4-5 (D.N.J. Nov. 1, 2011) (holding that New Jersey was improper venue in discrimination case because discriminatory comments were made in Illinois and decision to terminate her employment was made in Illinois), *report and recommendation adopted*, No. CIV.A. 11-2380 SDW, 2011 WL 5825792 (D.N.J. Nov. 16, 2011); *Yacovella v. Apparel Imports, Inc.*, No. CIV.A. 14-5484 KM, 2015

---

[4]  Notably, the only reference to venue in the FAC is a conclusory allegation that cites the statute governing diversity subject matter jurisdiction, which is completely irrelevant to the issue of personal jurisdiction.  *See* (FAC ¶ 10 ("Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and amount in controversy.").)

WL 5098009, at *4 (D.N.J. Aug. 31, 2015) (same where decision to terminate employment was made in Florida, not New Jersey).  To the extent Plaintiff contends that venue in this District is proper because she may have communicated with JPMC personnel from her home in New Jersey, "such events, at best, have a 'tangential connection' with the parties' dispute surrounding whether she was discriminated [or retaliated] against."  *Taube*, 2011 WL 5599821, at *4.

### III.   Plaintiff's Claims Should Be Dismissed, Pursuant to Rule 12(b)(6), Because The Complaint Fails To State Facts Sufficient To Maintain Any Plausible Cause Of Action.

The FAC should also be dismissed because it fails to allege facts sufficient to maintain any claim under the NYSHRL or the NYCHRL.  Pursuant to Rule 12(b)(6), a complaint must be dismissed, "in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted."  *DePasquale v. Morgan Stanley Smith Barney LLC*, No. 10-6828, 2011 WL 3703110, at *2 (D.N.J. Aug. 23, 2011).  Although courts are generally required to accept factual allegations as true and draw reasonable inferences in favor of the non-moving party, the Court is not bound by "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and the Court need not credit a Plaintiff's "bald assertions" or "legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 697 (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In determining whether a plaintiff has satisfied this standard, courts must first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  After disregarding these conclusory allegations, a court should then accept as true only the remaining factual allegations and determine whether those allegations "plausibly give rise to an entitlement to relief."  *Id.*

Applying these standards to the allegations in the FAC, Plaintiff has failed to allege a viable claims against Defendants.

## A.   Plaintiff's Allegations Against JPMC are Insufficient to Maintain any Viable Claim.

### 1.   Plaintiff has failed to adequately allege a claim for hostile work environment under the NYSHRL or the NYCHRL.

To assert a viable hostile work environment claim under the NYSHRL, a plaintiff must allege "that the allegedly discriminatory conduct was (1) 'because of' [his protected characteristic] and (2) sufficiently severe or pervasive thereby altering [his] work conditions.'" *Petrisch v. HSBC Bank USA, Inc.*, No. 07-cv-3303, 2013 WL 1316712, at *12 (E.D.N.Y. Mar. 28, 2013).  Under the second element, simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not actionable.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Rather, an actionable harassment claim requires evidence showing that the workplace was permeated with discriminatory intimidation, ridicule, and insult, which was

20

sufficiently severe or pervasive to alter the conditions of the person's employment and create an abusive work environment. *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 672 (S.D.N.Y. 2012). Likewise, the NYCHRL "is not a general civility code," and alleged conduct that is not based "at least in part by discriminatory or retaliatory motives," or that "was nothing more than petty slights or trivial inconveniences'" is not actionable. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013).

Here, Plaintiff's "harassment" allegations relate to two distinct time periods: (1) a thirteen-month period from March 2016 and April 2017, when she alleges to have been mistreated by Ms. Jarnigan and Mr. Jensen; and (2) a fourteen-month period from April 2017 and June 2018, when Plaintiff was not actively working for JPMC. Plaintiff's allegations about each of these periods—even accepted as true— are insufficient to plead a hostile work environment claim.

### a. Plaintiff's allegations about Jensen and Jarnigan amount to trivial slights that are not actionable.

Beyond various conclusory allegations, which the Court should ignore, Plaintiff avers as to Mr. Jensen and Ms. Jarnigan that:

- Between March 2016 and December 2016, Plaintiff's working relationship with her manager (Jensen) and one of his team leaders (Jarnigan) began to deteriorate because "Jarnigan and Jensen developed a closer working relationship." (FAC ¶¶ 27-32.)
- Starting in December 2016, Plaintiff was "relegated to a more subservient role" where Jarnigan spoke to Plaintiff in a disrespectful tone, directed Plaintiff to bring Jarnigan lunch, and offering Plaintiff to

21

provide administrative services to consultants. (*Id.* ¶ 32.)

- When Plaintiff was too busy with "more pressing work responsibilities" to complete Jarnigan's tasks, Jarnigan complained to Jensen that Plaintiff was "uncooperative."  (*Id.* ¶ 34.)

- Jensen was dismissive of Plaintiff when she complained about Jarnigan, and he began "questioning her work and treating her with distrust." (*Id.* ¶¶ 37, 40.)

- Co-workers began to distance themselves from Plaintiff.  (*Id.* ¶ 41.)

- On April 4, 2017, Plaintiff heard from co-workers that Jarnigan was spreading rumors that Plaintiff made a "non-African American" employee cry, and that she had been reprimanded in December 2016. (*Id.* ¶¶ 36, 42.)

- Jarnigan referred to a stack of folders between her and Plaintiff's desks as "the Mexican/U.S. wall."  (*Id.* ¶ 43.)

- On April 14, 2017, Plaintiff discovered that Jensen had docked her one weeks' pay when she was actually working.  (*Id.* ¶ 53.)

- Jarnigan reported to Jensen that Plaintiff was using his office phone. (*Id.* ¶ 57.)

- On April 17, 2017, Plaintiff discovered that a JPMC Employee Relations manager told Jensen that Plaintiff had emailed Mr. Dimon to lodge complaints about her treatment (*Id.* ¶ 60.)

As an initial matter, none of these alleged incidents – on their face – has anything to do with Plaintiff's race or any other protected characteristic; and while Plaintiff does allege that "Jarnigan's treatment of [her] was dramatically different than her treatment of the non-African American Executive Assistants," that is nothing more than "a conclusory allegation . . . that is insufficient at this stage." *White v. Bridge Inc.*, No. 18-CV-1689 (AJN), 2019 WL 4805896, at *4 (S.D.N.Y. Sept. 30, 2019).  Indeed, in dismissing the initial Complaint, this Court recognized that Plaintiff's allegation that Jarnigan "treated her differently" did not "provide any

22

specific allegations in support." (Dkt. No. 18, at 3.)

Absent any allegation that her race "was the motivating factor behind any workplace hostility," Plaintiff's claims related to Mr. Jensen and Ms. Jarnigan should be dismissed. *Boonmalert v. City of New York*, 721 F. App'x 29, 34 (2d Cir. 2018); *see also Sutter v. Dibello*, No. CV18817ADSAKT, 2019 WL 4195303, at *23 (E.D.N.Y. Aug. 12, 2019) (granting motion to dismiss hostile work environment claims under state and city laws because "there are no allegations in the Amended Complaint plausibly connecting any action taken against Plaintiff to . . . her race"), *report and recommendation adopted*, No. 218CV00817ADSAKT, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019)*White v. Bridge Inc.*, No. 18-CV-1689 (AJN), 2019 WL 4805896, at *4 (S.D.N.Y. Sept. 30, 2019) (same); *Carter v. Verizon*, No. 13-CV-7579, 2015 WL 247344, at *6 (S.D.N.Y. Jan. 20, 2015) (same).

Even if Plaintiff had pled non-conclusory allegations related to racial animus, which she has not, her allegations about Mr. Jensen and Ms. Jarnigan still fail to give rise to any actionable conduct. At most, Plaintiff alleges that over an thirteen-month period she (1) was asked to do menial tasks, (2) was called "uncooperative," (3) was falsely accused of making someone cry, (4) was ostracized by her manager and co-workers, and (5) was docketed one weeks' pay for complaining about such conduct. Even when evaluated under the more lenient standard applied to claims under the NYCHRL, these allegations fail to rise above ordinary workplace slights. *See Kim*

23

*v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 987 N.Y.S.2d 338, 344 (2014) (dismissing hostile work environment claims under the NYSHRL and NYCHRL, where employee alleged only isolated remarks and incident where she was reprimanded for reading a book while at work); *Bermudez v. City of New York*, No. 1:10-CV-1162, 2015 WL 1500235, at *10 (S.D.N.Y. Mar. 31, 2015) (dismissing NYCHRL hostile work environment claim where plaintiff alleged that supervisor made "derogatory comments about Puerto Ricans, Latinos and Hispanics").

> **b.    Plaintiff's remaining "harassment" allegations are unrelated to her race and are not actionable.**

Plaintiffs remaining "harassment" allegations fare no better and fail for similar reasons. Plaintiff alleges that, after commencing a medical leave of absence in April 2017:

- On June 5, 2017, Plaintiff's request for additional leave was denied but then reinstated four days later. (FAC ¶ 68.)

- On August 23, 2017, JPMC presented Plaintiff with a severance agreement. (*Id.* ¶ 80.)

- As of August 2017, Plaintiff had not been contacted by JPMC's recruiting team, but she continued "getting paid as an employee without a position." (*Id.* ¶¶ 81-82.)

- On October 11, 2017, JPMC advised Plaintiff that, if she did not find a new position or sign the severance agreement by November 1, 2017, her employment would be terminated. (*Id.* ¶ 84.)

- On November 3, 2017, Plaintiff was required to undergo a fitness for duty examination and to provide her medical records based on threat she made to harm herself and potentially others. (*Id.* ¶¶ 87, 90-91.)

- On December 28, 2017, Plaintiff traveled to New York City for a meeting with a member of JPMC's recruiting team only to find out that the meeting

24

was to be telephonic.  (*Id.* ¶ 94-96.)

- In February 2018, a member of JPMC's legal department spoke to Plaintiff "derisively" when Plaintiff confirmed that she wanted to return to work.  (*Id.* ¶ 99.)

- On March 9, 2018, JPMC offered Plaintiff a position that was below her prior grade and that reported to someone with whom Plaintiff did not get along. (*Id.* ¶ 101.)

- Although Plaintiff was allowed to select the next positions to which she interviewed, she was not placed in any of those roles because she lacked enthusiasm.  (*Id.* ¶ 105-06.)

- JPMC told Plaintiff that her employment would be terminated, effective May 29, 2018, if she was unable to find a position, but Plaintiff's employment was actually terminated weeks later on June 14, 2018.  (*Id.* ¶¶ 111-14.)

These allegations of purported "harassment," like those regarding Mr. Jensen and Ms. Jarnigan, are facially devoid of any connection to Plaintiff's race and are, therefore, not actionable.  Even if Plaintiff had averred racial animus in connection with these allegations, however, they still fail to give rise to any actionable conduct. Ordinary managerial decisions, such as granting or denying leave, declining an employee for an internal position, and even offering a severance package, do not constitute harassing conduct as a matter of law.  *See Crawford-Bey v. New York & Presbyterian Hosp.*, No. 08 CIV. 5454 RJS, 2011 WL 4530193, at *8 (S.D.N.Y. Sept. 30, 2011) ("ordinary management decisions," such as refusing to offer training opportunities, "plainly fail to establish a hostile working environment").

To the extent Plaintiff attempts to rely on emails she addressed to Mr. Dimon to support her hostile work environment claims, none of those communications

contain allegations of actionable conduct.  For example, Plaintiff purportedly wrote Mr. Dimon on August 10, 2017, regarding a conversation she had with JPMC medical personnel about her medical leave of absence:  "Please stop harassing me. Please stop judging me by the color of my skin and start respecting me as a person, a black woman who spoke up regardless of the consequences."  (FAC ¶ 77.)  While these general and vague conclusory accusations reference Plaintiff's race, they do not actually identify what about JPMC's return-to-work process was harassing or how her race played any role in that process.  In other words, the FAC is completely devoid of any alleged facts suggesting that a similarly situated non-African-American employee was somehow treated more favorably than she was. That Plaintiff chose to use divisive and sometime race-related language when describing ordinary employment decisions – whether in the FAC or in communications to Mr. Dimon – simply does not elevate her allegations to actionable conduct.

Plaintiff's hostile work environment claims are simply not plausible.  She alleges that, throughout her employment with JPMC, she "was respected by Defendant JPM upper management, her colleagues, and any member of the Defendant JPM community with whom she interacted." (FAC ¶ 14.)  It was not until the Spring of 2016, when her relationship with Mr. Jensen and Ms. Jarnigan soured for reasons unrelated to Plaintiff's race, that she allegedly began to feel "tortured, degraded and humiliated" (FAC ¶ 59) and ultimately "was admitted to the Hospital

with chest pains, high blood pressure and breathing issues" (*id.* ¶ 63).  From that point forward until the termination of her employment over a year later, Plaintiff no longer worked with Mr. Jensen or Ms. Jarnigan, and she remained at home receiving her full pay from JPMC while she looked for another position within the Bank. Nothing about these circumstances suggests that Plaintiff experienced any racially motivated harassment or treatment.  Her hostile work environment claims should, therefore, be dismissed.

### 2.   *Plaintiff has failed to adequately allege a claim for race discrimination under the NYSHRL or the NYCHRL.*

Plaintiff's race discrimination claim fares no better.  To adequately plead a claim for race discrimination under either the NYSHRL or the NYCHRL, a plaintiff must allege facts sufficient to show that she was treated "less well" ***because of*** her race.  *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 300 (S.D.N.Y. 2019) (standard under NYCHRL); *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018 (standard under NYSHRL).  The allegations in the FAC fail to meet this minimum pleading standard.

The only race-based allegation related to Mr. Jensen and Ms. Jarnigan is that Jarnigan – who was not Plaintiff's manager – purportedly treated Plaintiff "different than  . . . non-African American Executive Assistants."  (FAC ¶ 33.)   However, as demonstrated above, that allegation is conclusory and fails to provide any substance whatsoever as to what this "different" treatment entailed or what similarly situated

employees were treated more favorably than Plaintiff.  In fact, "different" could mean better.  Plaintiff likewise alleges – in conclusory fashion – that, at some unidentified point during her 20-year employment with JPMC, she "was subjected to race discrimination in light of her less experienced non-African American colleagues receiving higher pay, promotions and other opportunities which were denied to her as a member of the African."  (FAC ¶ 130.)  But Plaintiff fails to identify any specific decisions related to pay, promotions, or "other opportunities" that were unfavorable to her.  She also fails to identify when these decisions were allegedly made.  Nor does she identify any actual comparators.

Plaintiff's communications to Mr. Dimon are also replete with vague allegations of discrimination.  For example, Plaintiff wrote:

- "I experienced racism from the day I joined JPMorgan but it was different. It was called undercover racism."  (FAC ¶ 83.)
- "You said you would not tolerate black employees being treated differently and what has happened and is still happening to me is the opposite of what you preach."  (*Id.* ¶ 86.)
- "I watched white secretaries graduate to areas where I should have been allotted the opportunity."  (*Id.*)
- "I was good enough to back up Senior Executive Administrative Assistants but I was never the right color to be one."  (*Id.*)
- "A non-black employee started JPMorgan working as my back-up and within two year of service versus my nine years of service, she was promoted to Vice President . . . ."  (*Id.*)

Notably, as the Court recognized in dismissing the initial Complaint, these vague allegations appear only in the communications to Mr. Dimon and are "not separately

ple[d]."  (Dkt. No. 18, at 6.)  These allegations, again not separately pled in the FAC, should be disregarded here.  Regardless, at most, these vague allegations show that at some point approximately 13 years ago, Plaintiff believes that an unidentified, non-African American employee was promoted to a position above the one Plaintiff held.[5]  That is it.  Plaintiff does not allege facts to identify who made the decision to promote the unidentified employee, whether Plaintiff what qualified for the position at issue, or whether she even applied for that position.

Further, while Plaintiff attempts to paint her 20-year employment with a broad brush of discrimination, that narrative is belied by the allegations in the FAC that:

- Throughout her employment with JPMC, Plaintiff "received meets or exceeds expectations on her performance reviews and she was never reprimanded or disciplined."  (FAC ¶ 13.)

- Plaintiff "was considered an exemplary employee who was respected by [JPMC] upper management, her colleagues, and any member of the [JPMC] community with whom she interacted.  (*Id.* ¶ 14.)

- Plaintiff "was the only African American employee who worked in the executive office suite," and she was "proud of her accomplishments" at JPMC given that she "never graduated college."  (*Id.* ¶¶ 21, 24.)[6]

---

[5]  If, as alleged, Plaintiff had "nine years of service" with JPMC, this alleged incident would have occurred in or around 2006.  And, even if she had adequately alleged that she had been denied a promotion because of her race 13 years ago, that claim clearly would be time-barred.  *See Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 474 (S.D.N.Y. 2004) ("Discrimination claims under the NYSHRL and NYCHRL are subject to three-year statutes of limitations.").

[6]  Plaintiff also vaguely alleges that, at some identified point, she "noticed the disparity in the terms and conditions of employment of [JPMC] between African American employees and their non-African American counterparts, including promotional opportunities, compensation and other perquisites of . . . employment."  (FAC ¶ 22.)  However, as the Court recognized, "Plaintiff does not support these broad allegations with any specific facts or examples."  (Dkt. No. 18, at 2.)

In any event, because Plaintiff has failed to allege any facts to show that show she was actually treated "less well" than any similarly situated employees because of her race, her discrimination claim should be dismissed.  *See LaSalle v. City of New York*, No. 13 CIV. 5109 PAC, 2015 WL 1442376, at *6 (S.D.N.Y. Mar. 30, 2015) (granting motion to dismiss under "more lenient standard of the NYCHRL, because Plaintiff alleges no facts from which the Court could determine that she was treated 'less well' than other employees because of her race").

### 3. Plaintiff has failed to adequately allege a claim for retaliation under the NYSHRL or the NYCHRL.

Plaintiff also fails to plead sufficient facts to maintain her retaliation claims. To assert a viable retaliation claim under either the NYSHRL or the NCHRL, a plaintiff "must allege facts showing that 'a causal connection exists between the protected activity and the adverse action.'"  *Avila v. 1212 Grant Realty, LLC*, No. 18 CIV. 7851 (LGS), 2019 WL 4805333, at *2 (S.D.N.Y. Sept. 30, 2019).  While the NYSHRL requires "materially adverse" employment actions and the NYCHRL requires "conduct that was reasonably likely to deter a person from engaging in such action," these standards are "roughly equivalent."  *Diaz v. City Univ. of New York,* No. 13 CV 2038 PAC MHD, 2014 WL 10417871, at *27 (S.D.N.Y. Nov. 10, 2014), *report and recommendation adopted in relevant part*, No. 13 CIV. 2038 PAC MHD, 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015).

Here, Plaintiff's allegations of purported retaliatory conduct aver vague,

conclusory, or merely involve ordinary workplace decisions, including: (1) "increase[ed] hostility"; (2) "refusing to take any action to address her complaints"; (3) "demanding she . . . submit to a fitness for duty examination," and (4) "failing to advise [Plaintiff] of her actual terminat[ion] date."[7]   (FAC ¶¶ 147.)   However, none of this purported conduct rises to the level of actionable conduct under either the NYSHRL or the NYCHRL.[8]  *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404-05 (S.D.N.Y. 2014) (dismissing NYSHRL discrimination claim where only alleged conduct was removal of plaintiff from roll call, instructing commanders to not work with her, refusing to grant her overtime work, giving her undesirable assignments and shifts, and writing her up on false charges of sleeping at work).

Plaintiff's retaliatory discharge claim should also be dismissed because the FAC is devoid of any alleged facts that plausibly establish any causal connection between the termination of Plaintiff's employment in June 2018 and her complaints of purported discrimination, which are alleged to have begun more than a year

---

[7]  While Plaintiff alleges that Jensen docked her one week's pay in retaliation for raising concerns about Jarnigan (FAC ¶ 53), that alleged complaint does not constitute protected activity because, even as alleged, it had nothing to do with Plaintiff's race or any other protected characteristic.  *See* (*id.* ¶ 36 (Plaintiff complained "that Jarnigan was exceeding her authority, that she was spreading false rumors about Plaintiff . . . and, in general, creating a hostile working environment")); *See Brunache v. MV Transp., Inc.*, 151 A.D.3d 1011, 1013 (N.Y. App. Div. 2017) (dismissing retaliation claim where "plaintiff failed to allege that he complained about statutorily prohibited discrimination, as opposed to general complaints about [employer's] treatment of its employees").

[8]  Even if those alleged incidents constituted actionable conduct, the FAC fails to plausibly allege any connection between that conduct and Plaintiff's purported complaints.

earlier in April of 2017.  (FAC ¶ 54.)  Indeed, the roughly 14-month gap between those events militates against an inference of causation.  *See Muhammad v. Juicy Couture/Liz Claiborne, Inc.*, No. 09.civ.8978, 2010 WL 4032735, at *6 (S.D.N.Y. July 30, 2010) ("[M]any courts in this circuit have held that periods of two months or more defeat an inference of causation." (collecting cases)).  Further, Plaintiff fails to allege any facts whatsoever to establish retaliatory animus on the part of anyone at JPMC.  To the contrary, Plaintiff's allegations establish that JPMC went to great lengths to support Plaintiff by, for example, granting her a nearly three-month medical leave of absence and by assisting Plaintiff with finding another position with the Bank when she returned from leave.  (FAC ¶¶ 63-105.)  While Plaintiff's employment ultimately was terminated because she rejected a position that was offered to her and otherwise was not selected for a position due to a perceived lack of enthusiasm, the FAC contains no allegations that her failure to commence employment in another role at JPMC was related in any way to her complaints.  Plaintiff, in fact, does not even allege the any of the individuals with whom she interviewed even knew about those complaints, let alone that they harbored any retaliatory animus towards her.

Because causation cannot be established on speculation alone, Plaintiff's retaliation claims should be dismissed.  *See Gilarno v. Borough of Freedom*, 462 F. App'x 177, 181 n.1 (3d Cir. 2012) (affirming dismissal given "the two-year period

between [plaintiff's] protected activities and the 2008 decision, [and plaintiff] can otherwise only speculate as to the [defendant's] retaliatory motive, and a mere possibility of causation is not enough to survive a motion to dismiss").

### B. Plaintiff's Allegations Against Mr. Dimon are Insufficient to Establish    Individual Liability.

Plaintiff seeks to hold Mr. Dimon individually liable for discrimination, retaliation, and hostile work environment, both as a direct actor and as an aider and abettor.  (FAC ¶¶ 151-59.)  Both theories are inadequately pled, and all claims against Mr. Dimon should be dismissed.

### 1. Mr. Dimon cannot be directly liable because Plaintiff has failed to allege that he was personally involved in any unlawful conduct.

The NYSHRL and NYCHRL premise direct individual liability on actual participation in the conduct giving rise to the unlawful activity.  *Villar v. City of New York*, 135 F. Supp. 3d 105, 143 (S.D.N.Y. 2015) ("Actual participation in conduct giving rise to a discrimination claim is required to support liability under both the NYSHRL and NYCHRL.").  Here, Plaintiff does not plausibly allege any facts upon which to establish that Mr. Dimon actually participated in any of the alleged discrimination, retaliation, or harassment.[9]  To the contrary, the only alleged conduct

---

[9]  While Plaintiff broadly alleges that Mr. Dimon "has an ownership interest in [JPMC]" and has "the authority to hire and fire [JPMC] employees" (FAC ¶ 152-53), she alleges no facts beyond Mr. Dimon's title (President and CEO of JPMC's parent company) to support that allegation. Plaintiff's NYSHRL claim against Mr. Dimon fails for that reason, as well.  *See Tyson v. Town of Ramapo*, No. 17-CV-4990 (KMK), 2019 WL 1331913, at *19 (S.D.N.Y. Mar. 25, 2019)

in which Mr. Dimon purportedly engaged was to make a statement at a Town Hall meeting denouncing discrimination, and to explain during an interview that the Bank was "making a special effort' to bring on more African-Americans by setting up a separate group to focus on school recruiting, retention and hiring []more senior African-American talent."   (FAC ¶ 25.)  Plaintiff does not allege that Mr. Dimon played any role whatsoever in decisions related to her employment, other than to hold town hall meetings that she and thousands of other JPMC employees attended. (*Id.* ¶ 18.)  Plaintiff's assertions that she merely sent correspondence to Mr. Dimon's email address are insufficient to create the requisite personal involvement in decisions relating to her employment that are necessary to establish individual liability under applicable law.  Because the Complaint fails to allege any facts whatsoever to support that Mr. Dimon "actively participated" in any allegedly unlawful conduct, Plaintiff's claims against him should be dismissed.  *Motta v. Glob. Contract Servs. Inc.*, No. 15-cv-8555-LGS, 2016 WL 1611489, at *3 (S.D.N.Y. Apr. 21, 2016), *appeal dismissed* (Sept. 28, 2016), *aff'd sub nom.* 675 F. App'x 98 (2d. Cir. 2017) (summary order) (dismissing NYSHRL and NYCHRL claims where plaintiff failed to allege that the defendants actually participated in the discriminatory conduct); *Moore v. City of N.Y.*, No. 15-cv-6600-GBD-JLC, 2017

---

(dismissing individual defendant where "Plaintiff has alleged no facts beyond their titles that would allow the Court to determine whether they had 'an ownership interest . . . or power to do more than carry out personnel decisions made by others").

WL 35450, at *24-25 (S.D.N.Y. Jan. 3, 2017), *report and recommendation adopted*, 2017 WL 1064714, at *2 (S.D.N.Y. Mar. 20, 2017) (dismissing claims against individual defendants where plaintiff did not plead, *inter alia*, that the "discriminatory or retaliatory actions directly involved conduct or were the result of decisions attributed" to the individual defendants).

### 2. *Mr. Dimon cannot be directly liable because Plaintiff has failed to allege that he was personally involved in any unlawful conduct.*

Plaintiff's aider-and-abettor claims against Mr. Dimon should be dismissed for two reasons. First, it is well-settled under the NYSHRL and the NYCHRL, there can be no aid-and-abettor liability unless the employer is first found liable. *See France v. Touro College*, No. 14-CV-4613 (NGG) (CLP), 2016 WL 1105400, at *9 (E.D.N.Y. Feb. 16, 2016) ("[I]ndividual liability under the NYSHRL cannot attach without corresponding liability for the employer enterprise."), *report and recommendation adopted*, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016); *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015) (same under NYCHRL). Because Plaintiff's claims against JPMC fail as a matter of law, as demonstrated above, her claims against Mr. Dimon should also be dismissed. *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) (granting motion to dismiss NYSHRL and NYCHRL claims against individual defendants).

Second, even assuming that the Court finds that Plaintiff has asserted viable

claims against JPMC, her claims against Mr. Dimon should still be dismissed because Plaintiff has alleged no facts whatsoever to establish that Mr. Dimon aided or abetted any unlawful conduct.   At most, Plaintiff alleges that she sent correspondence to Mr. Dimon's email address "on at least seven (7) separate occasions," and that he "failed to take any action to address [her] complaints thereby allowing the hostility, discrimination and retaliation to continue unabated."  (FAC ¶¶ 164-65.)  Plaintiff's theory is implausible given the allegations in the FAC.  As alleged, Plaintiff first informed Mr. Dimon of the purported "harassing" treatment by Mr. Jensen and Ms. Jarnigan on April 17, 2017 (*id.* ¶ 54), she "left work early" the following day (*id.* ¶ 62), began a medical leave of absence on April 19, 2017 (*id* ¶ 63), and never worked with Mr. Jensen or Ms. Jarnigan again.  Thus, even if the alleged conduct of Jensen and Jarnigan were actionable harassment, which it is not, the FAC does not plausibly allege that Mr. Dimon allowed it "to continue unabated." Plaintiff's remaining allegations of "harassment" appear to relate to the return-to-work process, the offer of a severance agreement, and the efforts to find Plaintiff another position.  If anything, Plaintiff's allegations in this regard show that JPMC was actively attempting to address her concerns, not ignoring them.  As such, any claim that Mr. Dimon individually or JPMC as whole somehow failed to take any action is not plausibly pled and should be dismissed.

**IV.** **Should The Court Not Dismiss Plaintiff's Claim In Their Entirety, This Matter Should Be Transferred To The United States District Court For The Southern District Of New Jersey, Pursuant To 28 U.S.C. § 1404(a).**

Pursuant to 28 U.S.C. § 1404(a), the Court has broad authority to transfer this case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973); *Cadapult Graphic Sys., Inc.v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000).  This mechanism exists "to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses . . . .'" *Ricoh Co., ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  Here, given that Defendants have demonstrated above that personal jurisdiction exists over them in the Southern District of New York, the relevant inquiry is whether certain private and public interest factors weigh in favor of transfer.  In this case, they clearly do.

**A.** **The Private Interest Factors Favor Transfer Of Venue.**

In the Third Circuit, the private factors include:  (1) plaintiff's original choice of venue; (2) defendant's forum preference; (3) where the claim arose; (4) convenience to the parties in light of their financial and physical condition; (5) availability of witnesses in each of the fora; and (6) the location of books and records.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d. Cir. 1995).  In this

case, while an individualized analysis of each of these factors plainly favors transfer, "[t]he transfer analysis . . . is remarkably simple" given that "[n]early everything about this case emanated from [New York] and is in [New York]." *Fragola v. Plainville Police Dep't*, No. CV 15-6281 (CCC), 2016 WL 2943816, at *2 (D.N.J. May 20, 2016).  That is, Plaintiff was employed exclusively in New York, all of the decisions related to that employment were made by JPMC employees in New York, all of the allegedly discriminatory conduct occurred in New York, and Plaintiff brings claims strictly under New York law.  Accordingly, all the relevant witnesses and records are also located in New York.

Further, courts in this District have consistently recognized that while a plaintiff's choice of forum is given "some consideration[,] it is certainly not conclusive" and "may be disregarded" where, as here, "the bulk of plaintiffs claim occurred in the transferee venue, plaintiffs choice of forum may be disregarded. *Id.* (citing *Moreau v. Wallgreens*, Civ. No. 06-3347 (JLL), 2009 WL 192467 (D.N.J. Jan 27, 2009)).  To the extent Plaintiff argues that it is inconvenient for her to litigate a case in New York because she lives in New Jersey, any such argument is belied by Plaintiff's own allegation that she commuted to Manhattan for work for 20 years. (FAC ¶¶ 1, 12, 20, 96.); *See Fragola*, 2009 WL 192467, at *2 (plaintiff who "appeared in Connecticut for his criminal proceedings, has not demonstrated any meaningful inconvenience from having to prosecute this case in Connecticut").

38

As the foregoing demonstrates, the private interest factors weigh heavily in favor of transfer of this matter to the Southern District of New York.

**B.     The Public Interest Factors Favor Venue Transfer.**

The private interest factors also balance in favor of transfer.  Under Third Circuit law, these factors include:  (1) the administrative difficulties flowing from court congestion; (2) the "local interest in having localized controversies decided at home"; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in application of foreign laws; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.  *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991).  "In evaluating the public interest factors the district court must 'consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.'" *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 300 (3d Cir. 2010).

Here, because "[t]he primary locus of the dispute is in [New York]," all of "[t]he principal events giving rise to [P]laintiff's claims took place in [New York]," and all of the allege misconduct occurred in New York, federal courts in that State have "the primary interest in resolving the issues in dispute." *Fragola*, 2016 WL 2943816, at *3.  Relatedly, federal courts in New York clearly are more familiar with the law governing Plaintiff's claims under NYSHRL and NYSCHRL.  And to

burden a New Jersey jury with a trial involving only New York law and alleged conduct that occurred only in New York would unquestionably be unfair.

Finally, the factor of "the administrative difficulties flowing from court congestion" does not preclude a transfer. The Federal Court Management Statistics show that as of June 30, 2019, the median time "From Filing to Disposition" for a civil case in the Southern District of New York was 6.5 months, which is not significantly longer than the 5-month median time in the District of New Jersey. *See* United States District Courts — National Judicial Caseload Profile, *available at Federal Court Management Statistics, June 2016*, U.S. Courts (June 30, 2019), available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf.  Therefore, this factor does not preclude transfer here.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion and enter an order dismissing Plaintiff's First Amended Complaint in its entirety.  Should the Court not dismiss all of Plaintiff's claims, this matter should be transferred to the Southern District of New York.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated:  October 23, 2019

_____

s/ Jason J. Ranjo
Grace E. Speights (*pro hac vice*)
Terry D. Johnson
Jason J. Ranjo

40